IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FRANKLYN GOODRIDGE and
JUNE P. GOODRIDGE,

    Plaintiffs,

    v.        CV 114-150

QUICKEN LOANS, INC.; GOVERNMENT
NATIONAL MORTGAGE ASSOCIATION AS
TRUSTEE FOR SECURITIZED TRUST
GINNIE MAE REMIC TRUST 2013-131;
GINNIE MAE; and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC.,

    Defendants.

**O R D E R**

This matter is before the Court on Defendants Quicken Loans, Inc. ("Quicken") and Mortgage Electronic Registration Systems, Inc.'s ("MERS") (collectively, "Defendants") Motion to Dismiss Plaintiffs Franklyn and June P. Goodridge's Complaint. (Doc. 10.) Also before the Court is the Goodridges' "Order for Entry to Quiet Title and to Strike Defendants['] Motion to Dismiss for Lack of Standing." (Doc. 19.) The Goodridges charge Defendants with a litany of claims arising from their ownership of 3301 Thames Place, Hephzibah, Georgia 30815, including wrongful foreclosure, fraud, intentional infliction of emotional distress, slander of title, as well as violations of the Truth in Lending Act ("TILA"), Home

Ownership and Equity Protection Act ("HOEPA"), and Real Estate Settlement Procedures Act ("RESPA"). The majority of the Goodridges' allegations appear to be grounded in the theory that Defendants "unlawfully" securitized their home loan and improperly split the promissory note from the security deed. The Goodridges further contend that Defendants have "conspired to facilitate [a] NON-JUDICIAL coup" and are "engaging in an unrelenting abuse of process . . . to delay this court and distract plaintiffs" by allegedly failing to cooperate during a Rule 26(f) conference. (Doc. 19 at 4.) Defendants respond simply that no foreclosure has occurred, and on account of severe pleading deficiencies, the Goodridges fail to state any claim upon which relief may be granted. For the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 10) and **DENIES AS MOOT** Plaintiffs' "Order for Entry to Quiet Title and to Strike"[1] (Doc. 19.)

## I. FACTUAL BACKGROUND

On July 25, 2013, Plaintiff obtained a mortgage loan for $127,250.00 ("the Loan") from Quicken, secured by the property located at 3301 Thames Place, Hephzibah, Georgia 30815 ("the

---

[1] The Court also construes the Goodridges' second filing to move for a preliminary injunction. (See Doc. 19 at 11, 14.) For the same reasons the Court ultimately dismisses all the Goodridges' claims with prejudice, the Court finds that the Goodridges cannot establish "a substantial likelihood of success on the merits," a prerequisite to granting such extraordinary equitable relief. See Cataldi v. New York Cmty. Bank, No. 1:13-CV-3972-RWS-JSA, 2014 WL 359954, at *2 (N.D. Ga. Feb. 3, 2014); Alexis v. Mortg. Elec. Registration Sys., Inc., No. 1:11-CV-01967-RWS, 2012 WL 716161, at *5 (N.D. Ga. Mar. 5, 2012). As this defect alone is fatal, the Court will not address the remaining prerequisite elements for preliminary injunctions set forth in Federal Rule of Civil Procedure 65 and Siebert v. Allen, 506 F.3d 1047, 1049 (11th Cir. 2007).

2

Property"), and evidenced by a Promissory Note ("the Note") executed in favor of Quicken and its successors and assigns, promising to repay the Loan amount. (Doc. 1, Ex. A ("Compl."), ¶ 29; Doc. 10, Ex. A ("Deed"), at 2.)[2] The Goodridges also signed a Security Deed ("the Deed") in favor of MERS, as nominee for Quicken and its successors and assigns, granting MERS a first priority security interest in the Property to secure the Goodridges' indebtedness under the Note. (Deed at 2-3.) The Security Deed granted MERS — as nominee for Quicken and Quicken's successors and assigns — and MERS' successors and assigns, power of sale. (Id. at 3.) MERS subsequently assigned the Deed to Government National Mortgage Association, as Trustee for Securitized Trust Ginnie Mae REMIC Trust 2013-131 ("the Trust"). (Compl. ¶ 30; Defs.' Br., Doc. 10-1, at 3.) Despite these transfers, Quicken retained its role as the Loan's service provider. (Defs.' Br. at 3.)

According to Defendants, in March 2014, the Goodridges defaulted on the Loan, a fact which they contest. (Compl. ¶ 100; Defs.' Br. at 3.) The Goodridges, proceeding *pro se*, then filed a complaint against Defendants in the Superior Court of Richmond County, Georgia, on May 19, 2014, asserting various claims under federal and state law. Two days later, on May 21, 2014, pursuant to the express terms of the Deed, Quicken sent the Goodridges pre-

---

[2] "The court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed," meaning the "authenticity of the document is not challenged." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (citations omitted).

3

acceleration notices that informed them of their default and gave them thirty days to cure. (Defs.' Br. at 3.) Nearly four months later, on September 30, 2014, the Goodridges received notice that Shapiro, Swertfeger & Hasty LLP will conduct a non-judicial foreclosure sale of the Property on November 4, 2014. (Doc. 19, Ex. A.) According to a separate notice dated September 30, the total indebtedness owed by the Goodridges is $126,324.82, nearly the entire loan amount. (Doc. 23, Ex. B.)

After service of the complaint in the Richmond County case, Defendants timely removed the action to this Court on July 3, 2014. (Doc. 1.) Defendants now file a motion to dismiss on the grounds that the Goodridges have failed to state an actionable claim for relief and have failed to meet the requisite pleading standards of Federal Rules of Civil Procedure 8 and 9(b).

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions

as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Additionally, when plaintiffs act *pro se*, the pleadings are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." Thomas v. Pentagon Fed. Credit Union, 393 F. App'x 635, 637 (11th Cir. 2010). Indeed, *pro se* claimants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988) (internal quotation marks omitted).

**III. DISCUSSION**

The Goodridges' Complaint fails to satisfy the pleading standards to a degree the Court cannot reconcile. First, the Goodridges provide a 32-page, 152-paragraph laundry list of events, many of which are irrelevant to the Goodridges' asserted claims and appear to be copied or reworked from a "forensic audit" of their loan documents. In instances such as this, the Eleventh Circuit does not require the district court, or the defendants, to "sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1296 (11th Cir. 2002) (citations omitted). Although the Goodridges narrate the facts of this case, they also interject their opinions and make vague and conclusory allegations of wrongdoing by Defendants related to the mortgage at issue, the securitization of the mortgage, the assignment of the security deed, and Defendants' acceleration of the Goodridges' obligation upon default. For the most part, the Goodridges fail to specify the actions in which each defendant engaged to support each cause of action. A complaint justifiably may be dismissed on these grounds. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984). Simply, the Goodridges' filings are equivalent to a "shotgun" pleading that has been soundly condemned by the Eleventh Circuit Court of Appeals. Thompson v. RelationServe Media, Inc., 610 F.3d 628, 650 n.22 (11th Cir. 2010).

Moreover, at the outset, the Court observes:

6

> Plaintiff's allegations are remarkably similar to those in numerous other cases that have been filed by plaintiffs (often unrepresented) in an effort to delay, prevent or even reverse foreclosures and dispossessory actions. Such lawsuits — wherein the plaintiffs often make rambling, incomprehensible and/or conclusory allegations about mortgage industry practices such as the securitization of mortgages, and the MERS assignment and registration system, allege that the promissory note and the security deed have been improperly "split" or separated, and demand to see the promissory note — have become commonplace.

Jorgensen v. Fed. Home Loan Mortg. Corp., No. 2:12-CV-00236-RWS, 2013 WL 5200598, at *3 (N.D. Ga. Sept. 13, 2013) (listing cases). In this regard, even taking the Goodridges' *pro se* status into account, the allegations before the Court facially appear to be frivolous. The Goodridges merely echo the unsound theories described above, namely that (1) Defendants have "unlawfully sold, assigned, and/or transferred . . . [the] Promissory Note and Mortgage/Deed of Trust, and, thus, do not have lawful ownership or a security interest in Plaintiff's [sic] Home" (Compl. ¶ 14; see also Doc. 19 at 13-14); (2) the securitization of their home loan was unlawful (Compl. ¶¶ 30-37, 44); and (3) the "assignment of [the Deed] without proper transfer of the obligation that secures it" renders the transaction void (id. ¶ 43). More comprehensibly, the Goodridges allege that Quicken sold them a deceptive product, unjustly qualified them for a loan that they could not afford, and failed to explain to them "the workings" of the entire loan transaction. (Id. ¶¶ 51-55.) In the interest of thoroughness,

7

the Court nevertheless turns to the substance of the Goodridges' claims.

A.  **Wrongful Foreclosure & Slander of Title (Counts I & V)**

As previously noted, Defendants did not initiate foreclosure proceedings against the Property at issue in this case until September 30, 2014, and the sale will not take place until November 4, 2014. (Doc. 19, Ex. A.) Georgia law requires a plaintiff seeking damages for wrongful foreclosure to establish that the property at issue was *actually sold* at foreclosure. Jenkins v. McCalla Raymer, LLC, 492 F. App'x 968, 972 (11th Cir. 2012). Accordingly, the Goodridges cannot state a claim for wrongful foreclosure, and the Court **DISMISSES** Count I.[3]

The Goodridges nevertheless continue on to allege that each Defendant "disparaged Plaintiff's [sic] exclusive valid title by and through the preparing, posting, publishing, and recording of

---

[3] To be sure, Georgia law also recognizes a cause of action for attempted wrongful foreclosure when a foreclosure action was commenced but not completed, and the plaintiff demonstrates that a defendant "knowingly published an untrue and derogatory statement concerning the plaintiffs' financial conditions and that damages were sustained as a direct result." Sale City Peanut & Milling Co. v. Planters & Citizens Bank, 130 S.E.2d 518, 520 (Ga. Ct. App. 1963); see also Morgan v. Ocwen Loan Servicing, LLC, 795 F. Supp. 2d 1370, 1377 (N.D. Ga. 2011) (citing cases). The Goodridges' Complaint avers that Defendants have "disparaged Plaintiff's [sic] exclusive valid title by and through the preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, Trustee's Deed, and the documents evidence the commencement of judicial foreclosure by a party who does not possess that right." (Compl. ¶ 104.) The Court does not accept as true this boilerplate, conclusory assertion referencing documents that are of no relevance to this case. The Goodridges allege no *facts* in support of their argument that either the Notices of Default or the newly-issued Notice of Sale are false, that Defendants possessed any knowledge of any falsity, or how the Goodridges have sustained any damages as a result of the publication. To the extent, therefore, that the Goodridges seek to state a claim for wrongful attempted foreclosure, the Court **DISMISSES** it too.

8

the documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, Trustee's Deed, and the documents evidence the commencement of judicial foreclosure by a party who does not possess that right." (Compl. ¶ 104.) As a result, the Goodridges assert there is a cloud on their title that has caused them unspecified damages, continuing expenses, and "humiliation, mental anguish, anxiety" — among other feelings. (Id. ¶¶ 106-108.) To sustain a claim for slander of title, a plaintiff must establish that (1) the defendant uttered and published a slanderous work; (2) the work was false; (3) the work was malicious; (4) plaintiff possessed an estate in the property slandered; and (5) plaintiff sustained special damages. Amador v. Thomas, 578 S.E.2d 537, 540 (Ga. Ct. App. 2003).

The Goodridges neither allege nor prove three of the five elements of their slander of title claim, and the failure to sufficiently allege any one of those elements is fatal. In particular, the only documents Defendants have "published" are the Notices of Default and Notice of Sale. As to the default notices, the extent of that "publication" was exclusively *to the Goodridges*, and slanderous "publication" does not occur under the law, until it is communicated "to any person *other than the impugned party*." O.C.G.A. § 51-5-3 (emphasis added); Roberts v. Lane, 435 S.E.2d 227, 228 (Ga. Ct. App. 1993). Moreover, the Goodridges allege no facts to support their argument that the information contained in

either the Notices of Default or Notice of Sale is false and malicious. (See Compl. ¶¶ 104, 105.) Defendants complied with the Deed's express terms in providing such notice. (Deed at 13, ¶ 22.) Falsity based solely on the Goodridges' misguided theories of "unlawful" securitization and "separation of the note" — both of which the Court addresses in depth below in Part III.D — is simply insufficient as a matter of law. The Court therefore also **DISMISSES** Count V.

### B. Fraud (Counts II & III)

The Goodridges allege Defendants defrauded them when they "concealed" the securitization of the Loan and failed to disclose "that Borrower's loan changed in character" by being "included in a pool with other notes." (Compl. ¶ 76.) They further allege that an unspecified defendant intentionally misrepresented to them that the successors and assigns of the Deed "were entitled to exercise the power of sale provision." (Id. ¶ 85.) Finally, in conclusory fashion, the Goodridges allege that a defendant "fail[ed] to disclose the material terms of the transaction." (Id. ¶ 87.)

"[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). To sufficiently plead a claim for fraud, plaintiffs in Georgia must establish five elements: "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by

plaintiff, and damage to plaintiff." Kabir v. Statebridge Co., LLC, No. 1:11-CV-2747, 2011 WL 4500050, at *6 (N.D. Ga. Sept. 27, 2011) (quoting Baxter v. Fairfield Fin. Servs., 704 S.E.2d 423, 429 (Ga. Ct. App. 2010)). This rule alerts defendants to the precise misconduct with which they are charged and protects defendants against spurious charges of fraudulent behavior. Steinberg v. Barclay's Nominees, No. 04-60897, 2008 WL 4601043, at *11 (S.D. Fla. Sept. 30, 2008) (citing Brooks v. Blue Cross Blue Shield of Fla., Inc., 116 F.3d 1364, 1370-71 (11th Cir. 1997)). The Eleventh Circuit has further held that compliance with Rule 9(b) requires a complaint to set forth the following: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. Kabir, 2011 WL 4500050, at *6.

The Goodridges' Complaint is insufficient to satisfy the heightened pleading standard outlined above. They fail to allege any precise statements that were made, which defendant(s) made those statements, where they were made, how the statements caused them to enter the loan agreement, or how Defendants benefitted as a consequence. Instead, they generalize that Defendants "concealed" the securitization, which purportedly was "intended to induce" the

11

Goodridges to enter the Loan, and Defendants ultimately "profited" from this concealment. (Compl. ¶¶ 76, 78, 81.)

Even if sufficiently pled, the Goodridges' theory that Defendants' failure to inform them that the Loan may be securitized and sold in any number of pieces entitles them to relief is without merit. The Court is unaware of any legal authority — and the Goodridges provide none — supporting the proposition that the securitization of a debt insulates a debtor from foreclosure or relieves a debtor of the obligation to repay. See Tonea v. Bank of Am., N.A, No. 1:13-CV-1435-WSD, 2014 WL 1092348, at *3 (N.D. Ga. Mar. 18, 2014); Montoya v. Branch Banking & Trust Co., No. 1:11-CV-01869-RWS, 2012 WL 826993, at *6 (N.D. Ga. Mar. 9, 2012); Searcy v. EMC Mortg. Corp., No. 1:10-CV-0965-WBH, slip op. at 2 (N.D. Ga. Sept. 30, 2010) ("While it may well be that Plaintiff's mortgage was pooled with other loans into a securitized trust that then issued bonds to investors, that fact would not have any effect on Plaintiff's rights and obligations with respect to the mortgage loan, and it certainly would not absolve Plaintiff from having to make loan payments or somehow shield Plaintiff's property from foreclosure.").

The Goodridges' claims that Defendants "intentionally misrepresented" who was entitled to exercise the power of sale (Compl. ¶ 84) and who was the ultimate holder of the Note and/or Deed (id. ¶ 86) suffer from the same gross pleading deficiencies: there is no "who, what, when, where, and how." Moreover, it

12

appears to the Court that the Goodridges ground these claims in a fundamental misunderstanding of the law. The Goodridges freely executed the Deed, which expressly granted MERS, its subsequent successors, and its assigns "the right to foreclose and sell the Property." (Deed at 3.) To the extent Defendants made fraudulent — or even merely confusing — oral representations about the power of sale above and beyond the express language in the Deed, the Goodridges do not allege them.

The Goodridges do allege Defendants made fraudulent representations when they "were attempting to collect on a debt which they have no legal, equitable, or pecuniary interest in" on account of secondarily assigning or selling "the mortgage loan" to the Trust. (Compl. ¶¶ 34, 86.) This too, substantively, has no grounds in the law. Even if Defendants are not the "'holder and owner' of the Note" and had no beneficial interest in the Goodridges' debt obligation despite representing so, they still have the right to exercise the power of sale pursuant to the terms of the Deed. You v. JP Morgan Chase Bank, N.A., 743 S.E.2d 428, 433 (Ga. 2013).

Plaintiff's claims for fraud (Counts II & III), therefore, are also **DISMISSED** as a matter of law.

### C. Intentional Infliction of Emotional Distress ("IIED") (Count IV)

The Complaint alleges the Goodridges have "suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression" and are "living under [a] constant emotional nightmare" because Defendants have "threatened [them] with the loss of the Property." (Compl. ¶¶ 93, 98, 100). According to the Goodridges, Defendants "intentionally, knowingly, and recklessly" created this "outcome," which "exceeds all bounds . . . usually tolerated in a civilized society" because Defendants allegedly do not have any right, title, or interest in the Property. (Id. ¶¶ 94-96.)

To prevail on an IIED claim under Georgia law a plaintiff must allege, and ultimately provide evidence for, conduct that was (1) intentional or reckless; (2) extreme or outrageous; and (3) the cause of severe emotional distress. United Parcel Serv. v. Moore, 519 S.E.2d 15, 17 (1999). "The rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would arouse her resentment against the defendant so that she would exclaim 'Outrageous!'" Id. The conduct must be deemed extreme by a reasonable person, and whether it would be is a question of law for the court. Id.; Blue View Corp. v. Bell, 679 S.E.2d 739, 741 (Ga. Ct. App. 2009).

Generally, "[s]harp or sloppy business practices, *even if in breach of contract*," are generally not extreme or outrageous. United Parcel Serv., 519 S.E.2d at 17 (emphasis added)(citations omitted). Indeed, in the area of debt collection and mortgage foreclosures, as in any other context, a plaintiff's burden is stringent. For instance, neither "threatening language" nor collecting on a debt that has already been paid goes "beyond all bounds of decency" so as to state a claim. Smith-Tyler v. Bank of Am., N.A., 992 F. Supp. 2d 1277, 1282-83 (N.D. Ga. 2014); Cook v. Covington Credit of Ga., Inc., 660 S.E.2d 855, 858 (Ga. Ct. App. 2008).

This pleading is thus deficient on its face since it provides the Court with no plausible grounds on which to reasonably infer Defendants are liable for IIED. See Iqbal, 556 U.S. at 678. The Goodridges' conclusory allegations are nothing more than a recital of the IIED elements with no specific factual allegations. Even if the facts had been alleged with more specificity, as a matter of law these facts do not indicate Defendants are liable. No reasonable person would believe Defendants' actions were extreme or outrageous. As previously explained, Defendants have a legitimate reason to believe they are entitled to pursue foreclosure upon the Goodridges' default according to the terms of the Deed. The Court understands that the Goodridges' financial situation may be stressful, but the mere mailing of notices and frequent sales calls

exploring refinance options are hardly alarming. (Pls.' Br. at 2.) Consequently, the Court **DISMISSES** the Count IV.

> D. **Lack of Standing and/or Invalid Assignment (Counts VI, VII & X)**

Several of the Goodridges' claims rest on the arguments that (1) Defendants do not hold the promissory note and therefore do not have standing to exercise the power of sale; (2) the Deed is void because it was improperly "split" from the Note; or (3) MERS did not have authority to assign the Deed and violated the "Pooling and Servicing Agreement" in doing so. Courts have repeatedly rejected these claims, and each argument is wholly unsupported by Georgia law. Tonea v. Bank of Am., N.A., No. 1:13-cv-1435, 2014 WL 1092348, at *3 (N.D. Ga. Mar. 18, 2014) (rejecting the plaintiff's argument that MERS did not have the authority to assign his mortgage because "MERS [was] the grantee under the security deed, to which Plaintiff expressly agreed"); Menyah v. BAC Home Loans Servicing, LP, No. 1:12-CV-0228-RWS, 2013 WL 1189498, at *3 (N.D. Ga. Mar. 21, 2013) (finding the plaintiff lacked standing to attack the assignment between MERS and the defendant because the plaintiff was not a party to the contract); Milburn v. Aegis Wholesale Corp., No. 1:12-CV-01886-RWS, 2013 WL 1136983, at *3 (N.D. Ga. Mar. 18, 2013) (explaining that "as a stranger to the Assignment, Plaintiff lacks standing to challenge it"); Clarke v. Branch Banking & Trust Co., No. 1:12-CV-03383-JEC-RGV, 2013 U.S. Dist. LEXIS 49875, at *22 (N.D. Ga. Mar. 4, 2013) (noting that the plaintiff's "claim appears

16

to be an attempt to repackage a 'produce the note' argument that has been repeatedly rejected by this court, and is therefore due to be dismissed"); LaCosta v. McCalla Raymer, LLC, No. 1:10-CV-1171-RWS, 2011 WL 166902, at *5-6 (N.D. Ga. Jan. 18, 2011) (rejecting plaintiff's wrongful foreclosure claim based on "splitting" of note and security deed and finding that holder of security deed was authorized to exercise power of sale); You v. JP Morgan Chase Bank, N.A., 743 S.E.2d 428, 433 (Ga. 2013) (holding "[u]nder current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed *even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed*") (emphasis added).

The Court therefore **DISMISSES** the Goodridges' claims for quiet title (Count VI),[4] declaratory judgment (Count VII), and rescission

---

[4] The Goodridges' pleading and subsequent "Order for Entry to Quiet Title" also fail to satisfy the statutory requirements for a quiet title action under Georgia law. The Georgia Quiet Title Act, O.C.G.A. § 23-3-60 *et seq.*, provides specific procedural prerequisites to pleading a quiet title action. A plaintiff must file (1) a plat of survey of the land, (2) a copy of the immediate instrument or instruments, if any, upon which the petitioner's interest is based, and (3) a copy of the immediate instrument or instruments of record or otherwise known to the petitioner, if any, upon which any person might base an interest in the land adverse to the petitioner. O.C.G.A. § 23-3-62(c). At minimum, the Goodridges failed to attach to the Complaint and subsequent filings a plat as required by statute, and therefore their quiet title petitions are subject to dismissal. Montoya v. Branch Banking & Trust Co., No. 1:11-CV-01869-RWS, 2012 WL 826993, at *3 (N.D. Ga. Mar. 9, 2012); GHG, Inc. v. Bryan, 566 S.E.2d 662, 662 (Ga. 2002) ("A petition [to quiet title] is subject to dismissal only when on the face of the pleadings it appears that it is in noncompliance with OCGA § 23-3-62.").

(Count X), all of which seek either injunctive relief or damages based on the flawed legal theories described above.

### E. TILA, HOEPA, and RESPA (Counts VIII & IX)

Lastly, the Goodridges seek relief for Defendants' alleged violation of TILA, HOEPA, and RESPA. The Goodridges claim Defendants failed to provide them with "accurate material disclosures" and failed to "[take] into account the intent of the State Legislature in approving [TILA] which was to fully inform home buyers of the pros and cons of adjustable rate mortgages." (Compl. ¶ 133.) As a result, the Goodridges "lost substantial equity," "were unable to refinance their home or to obtain any modification of their loan, which has resulted in Plaintiff being permanently burdened by the fraudulent loan made by defendants." (Id. ¶ 135, 136.) Pursuant to RESPA, the Goodridges further allege that "[t]he interest and income that Defendants have gained is disproportionate to the situation Plaintiff find [sic] themselves in due directly to Defendant's failure to disclose that they will gain a financial benefit while Plaintiff suffer [sic] financially." (Id. ¶ 144.)

The Goodridges again fail to plead their claims with sufficient particularity to provide fair notice to *any* defendant in this case of what the statutory claims are and the grounds upon which the claims rest. Conclusory allegations that Defendants (1) gained "disproportionate income" or "creat[ed] a windfall," (2)

18

violated the whole of TILA and RESPA, and (3) provided inaccurate, false or incomplete disclosures fail to assert the necessary facts to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Moreover, to the extent the Goodridges complain they did not receive the required disclosures at all, the Court notes that both Mr. and Mrs. Goodridge appear to have signed such disclosures.[5] (Doc. 10, Ex. B.) These documents in fact bely their claim that they were misled or uneducated about the perils of adjustable rate loans in violation of federal law, as the Goodridges have a fixed-rate, fifteen-year mortgage. (Id.) For these reasons, the Court also **DISMISSES** Counts VIII and IX.

## IV. CONCLUSION

The Eleventh Circuit Court of Appeals has held that where a "more carefully drafted complaint might state a claim," the court must allow a *pro se* plaintiff "at least one chance to amend the complaint before the district court dismisses the action with prejudice," unless amendment would be futile. Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007); Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991). A more carefully drafted complaint would not state a claim in this case. It is utterly devoid of facts to support Plaintiffs' claims, and the incoherencies, internal

---

[5] The Goodridges wholly failed to respond to Defendants' arguments in favor of dismissing the TILA, HOEPA, and RESPA claims, and as such, did not challenge — or even mention — the authenticity of the TILA disclosures attached to Defendants' motion.

inconsistencies, and irrelevant attachments fail to demonstrate the plausibility of those claims. For the reasons set forth above, therefore, the Court hereby **GRANTS** Defendants' Motion to Dismiss. (Doc. 10.) All of Plaintiffs' claims are **DISMISSED WITH PREJUDICE**. The Court therefore **DENIES AS MOOT** Plaintiffs' "Order for Entry to Quiet Title and to Strike." (Doc. 19.) The Clerk **SHALL** terminate all deadlines and motions and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 21st day of October, 2014.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA